NOT FOR PUBLICATION

**[65, 67, 68, 70, 71]**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

CHRISTOPHER GRENDYSA,                  :
                                       :      Civil Action No. 02-1493 (FLW)
                 Plaintiff,            :
                                       :
            v.                         :      **OPINION**
                                       :
EVESHAM TOWNSHIP BOARD OF              :
EDUCATION, et al.,                     :
                 Defendants.           :
_____:

<u>Appearances</u>:

For Christopher Grendysa:
LOUIS M. BARBONE
JACOBS & BARBONE, ESQS.
1125 PACIFIC AVENUE
ATLANTIC CITY, NJ 08401

For Evesham Township Board of Education, Linda Moore, Elaine Daniele, Frank Summers and
John Bigley:
RICHARD L. GOLDSTEIN
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PA
WOODLAND FALLS CORPORATE PARK
200 LAKE DRIVE EAST
SUITE 300
CHERRY HILL, NJ 08002

For Frank Troso:
KELLY DANIELS
ARSENEAULT, FASSETT & MARIANO, LLP
560 MAIN STREET
CHATHAM, NJ 07928

1

For Shawn Hicks, Robert Hicks and Julia Hicks:
FRANCIS G. BASILE
RENEE E. SCROCCA
BASILE, TESTA & TESTA
424 LANDIS AVENUE
VINELAND, NJ 08360

For Eren Brewer, Carol Hard, William Darrah and William Bradley:
CLIFFORD L. VAN SYOC
JAMES E. BURDEN
VAN SYOC LAW OFFICES CHARTERED
CHERRY TREE CORPORATE CENTER
535 ROUTE 38 EAST - SUITE 501
ROUTE 38 & CUTHBERT BOULEVARD
CHERRY HILL, NJ 08002

**Wolfson, United States District Judge:**

The numerous motions for summary judgment have been filed by: 1) Evesham Township Board of Education ("ETBE"), Linda Moore, Elaine Daniele, Frank Summers and John Bigley (Collectively, "Evesham Defendants") against Plaintiff Christopher Grendysa ("Plaintiff" or "Grendysa"), 2) Detective Frank Troso ("Troso" or "Detective Troso") against Grendysa, 3) Shawn Hicks, Robert Hicks and Julia Hicks against Grendysa, 4) Eren Brewer, Carol Hard, William Darrah and William Bradley (Collectively, "Students and Parents") against Grendysa, and 5) ETBE, Linda Moore and John Bigley against Defendants/Crossclaimants Eren Brewer, Carol Hard, William Darrah and William Bradley.  The issues before the Court are: 1) whether Plaintiff's § 1983 claims against ETBE, Linda Moore, Elaine Daniele, Frank Summers, John Bigley and Detective Troso can survive summary judgment, 2) whether Plaintiff's claim for malicious prosecution against Eren Brewer, William Darrah and Shawn Hicks can survive summary judgment, 3) whether Plaintiff's negligence claim against Carol Hard, William Bradley, Robert Hicks and Julia Hicks can survive summary judgment, 4) whether Plaintiff's claims

2

against James Hubbard and the Daraios, who were never served, should be dismissed, and 5) if the § 1983 claims are dismissed, whether the Court should continue to exercise supplemental jurisdiction over the remaining state law claims.  The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.  For the reasons stated below, 1) the motion for summary judgment filed by Troso against Plaintiff Christopher Grendysa is granted, 2) the motion for summary judgment filed by ETBE, Moore, Daniele, Summers and Bigley against Plaintiff Christopher Grendysa is granted, 3) the motion for summary judgment filed by Shawn Hicks, Robert Hicks and Julia Hicks against Grendysa is granted, 4) the motion for summary judgment filed by Eren Brewer, Carol Hard, William Darrah and William Bradley against Grendysa is granted, 5)Plaintiff's claims against James Hubbard and the Daraios are dismissed with prejudice, 6) the third party claims filed by Eren Brewer, Carol Hard, William Darrah and William Bradley against T.L.C. Funding, Inc.-MA and certain John Does are dismissed, and 7) the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  Those claims are remanded to the Superior Court of New Jersey, Law Division, Cape May County.

## I.  BACKGROUND

### A.  Statement of Facts

Christopher Grendysa, a teacher, entered into a one year contract with ETBE to commence in September 1998 and conclude in June 1999.  Dep. Tr. of Grendysa at 42:22-24. Grendysa was assigned as a teacher to the Marlton Middle School within Evesham Township. Id. at 57:16-18.  During the 1998-1999 school year, Grendysa taught an unofficially designated "at risk" class of six, sixth grade boys, including Eren Brewer ("Brewer"), William Darrah ("Darrah"), Shawn Hicks ("Hicks"), James Hubbard ("Hubbard") and Kevin Lichfield

("Lichfield").  Id. at 62:5-63:13.  At the end of the 1998-1999 school year, Grendysa resigned. Evesham Defs.' Ex. B.

During the 1998-1999 and 1999-2000 school years, John Bigley ("Bigley") was the Evesham Township Superintendent of Schools, Dep. Tr. of Bigley at 8:20-9:2, Linda Moore ("Moore") was a Guidance Counselor[1] for Evesham Township, Dep. Tr. of Moore at 5:5-11, Elaine Daniele ("Daniele") was the Curriculum Supervisor for Evesham Township, Dep. Tr. of Daniele at 9:4-15, and Frank Summers ("Summers") was the Educational Technical Director for Evesham Township, Dep. Tr. of Summers at 8:21-9:2.

Relevant to this case, during the school year, Plaintiff attended a lecture given by Evesham Township regarding computer and internet use and received a copy of the policy and procedures regarding school computer usage. Evesham Defs.' Ex. A, Ex. S; Dep. Tr. of Grendysa, 46:7-22.  In addition, there were two computers in his classroom, one of which had Internet access.  Id. at 85:15-23.

According to Moore's testimony, on November 19, 1999 she met with Eren Brewer and William Darrah for a regular counseling session.  Dep. Tr. of Moore at 42:20-43:18.  At that time, they informed her that, during the prior school year, Grendysa had accessed pornographic web sites using a computer in the classroom,[2] and he had related stories to the boys from his past involving violence, weapons, and contests to attract overweight women. Dep. Tr. of Moore at

---

[1]Ms. Moore provided counseling, support, anger management and social skill services for plaintiff's interactive independent learning center class. Dep. Tr. of Moore at 10:20-11:10.

[2]Brewer told Troso that he first informed Moore in May 1999 of the fact that Grendysa had been accessing the sites and that Moore did nothing in response.  Tr. of Troso's Interview of Brewer at 10-11.  Darrah told Troso that he first informed Moore in the "middle" of the 1998-99 school year.  Tr. of Troso's Interview of Darrah at 21.  These facts are disputed.

42:2-15; Students and Parents' Ex. N, Report from Linda Moore to Mary Ann D'Amico of Nov. 19, 1999.  Moore reported the boys' claims to her superior, Mary Ann D'Amico, that same day, Dep. Tr. of Moore at 43:13-16, who, in turn, relayed the information to Bigley; he reviewed Moore's notes and contacted Summers, the school computer/technology coordinator.  Dep. Tr. of Bigley at 42:17-23-43:8.

Pursuant to Bigley's instructions, Summers downloaded and printed the weblog files to identify the websites accessed by a computer in Grendysa's classroom during April through June of the previous school year. Dep. Tr. of Summers at 27:11-28:23.  As a result of that review, Summers earmarked some of the sites which were accessed in Grendysa's classroom as possible pornographic sites. Id.; Evesham Defs.' Ex. H, Relevant Pages of Computer List.  However, Summers did not print out the weblogs from Grendysa's computer for the entire school year and Bigley never asked him to do so. Dep. Tr. of Bigley at 45:1-15; Dep. Tr. of Summers at 27:11-28:23.  The dates on which the questionable websites were visited were compared to Grendysa's attendance records; this comparison revealed that Grendysa was not absent from school on the days that the websites were accessed. Dep. Tr. of Bigley at 38:9-22.

The results of this internal inquiry caused Bigley, on December 3, 1999, to contact the Burlington County Prosecutor's Office and inform it of this information. Dep. Tr. of Bigley at 50:21-51:9.  Detective Troso of the Burlington County Prosecutor's Office, then conducted seveal interviews.  On December 8, 1999, he spoke to Bigley, Summers and Moore, Troso's Statement of Material Facts ¶¶ 16, 21, 23, on December 9, 1999, he interviewed Brewer, Darrah and Hicks. Id. ¶¶ 25, 29, 35, and on December 13, 1999, he spoke to Hubbard, id. ¶ 39.

Brewer told Troso that Grendysa used the computer to show the class "nude women

having sex," Tr. of Troso's Interview of Brewer at 5[3], "women with vibrators" id. at 6, "[g]uys sticking their penis into the girl, id., and "a girl with no clothes on," id. at 7. Furthermore, Brewer related that Grendysa "told everybody the [Internet] code" id. at 8. Finally, Brewer informed Troso that Grendysa told the class about putting nails through a baseball bat to make a weapon, id. at 12-13, and about a contest "to get the fattest and ugliest girl." id. at 15.

Darrah told Troso that Grendysa accessed "playboy.com," "penthouse.com," "cindymargolis.com," Tr. of Troso's Interview of Darrah at 3, the "fuck of the month" website, id. at 6, and a picture of "a girl in a bubble bath," id. at 11. He also reported to Troso that Grendysa said if there are problems to "get a baseball bat and hammer nails through it," id. at 4, and that Grendysa told them about contests he had with his friends to "get the fattest person" and "take them back to the house," id. at 5-6. Darrah also said that Grendysa "gave us the code to ... Internet access." Id. at 10.

Hicks told Troso that Grendysa would "go in ... dirty websites ... like penthouse.com and ancient Egyptian" Tr. of Troso's Interview of Hicks at 3, that Grendysa told the class about "a fat contest ...[to] bring home the fattest girl," id., and about taking "girls out on a boat and he'd say 'do it' or swim," id. at 9. Hicks explained that he got Grendysa's password from a classmate. Id. at 7-9.

Hubbard informed Troso that Grendysa told the class about "a pig contest" where Grendysa and his friends "would all put fifty bucks in a pot and go out and get fat women to come over to his apartment and dance around naked," Tr. of Troso's Interview of Hubbard at 2,

---

[3]The transcripts of Troso's interviews of Brewer, Darrah, Hicks, Hubbard, and Lickfield, as well as other documents, are captioned: "To Be Filed Under Seal." However, an Order was never entered to that effect. Therefore, they are public documents.

about how to take girls "out into the middle of the ocean and say do it or swim," id. at 3, and about how "he'd get baseball bats and put nails in them and go out and beat people up," id. at 3. Hubbard also stated that to get on the Internet, the students "typed in [Grendysa's] password." Id. at 5.  In addition, Hubbard told Troso that Grendysa "was going on the Playboy things on the Internet," id., that Grendysa would say "yo guys look at this chick, we'd come over and she'd be naked," id. at 6.

On December 15, 1999, Troso was provided with a computer log print-out of all the websites accessed by a computer in Grendysa's classroom between March 30, 1999 and June 21, 1999.  Troso's Statement of Material Facts ¶ 43.  That same day, Troso presented the Honorable Donald P. Gaydos, J.S.C. with an Affidavit of Probable Cause.  Id. at ¶ 44.   In the Affidavit, Troso averred that Eren Brewer, William Darrah and Shawn Hicks were interviewed and each informed Troso that Grendysa accessed pornographic material on the Internet. Evesham Defs.' Ex. L, Affidavit of Probable Cause.  Troso also swore that he personally accessed several of the websites which were found on the computer log and his research revealed that those sites contained pornographic material.  Id. As a result, Judge Gaydos issued five arrest warrants for Grendysa. Troso's Statement of Material Facts at ¶ 45.

Detective Troso, accompanied by Officers David Wentz and Bren Wilden of the Deptford Police Depatment and Detective Charles Loftus of the Burlington County Prosecutor's Office,[4] went to Grendysa's home on December 16, 1999; they asked Grendysa to meet with them at the

---

[4]Plaintiff's complaint also named Detective Loftus, Officer Wentz and Officer Wilden as Defendants.  However, none of them are presently part of the case.  Detective Loftus was dismissed from the case on February 18, 2004; Officers Wentz and Wilden were dismissed from the case on February 16, 2005.

Deptford Police Department.  Id. ¶ 46.  Although Troso had with him the warrants for Grendysa's arrest, he did not initially execute the warrants, nor did he inform Grendysa of the existence of the warrants.  Troso's Response to Grendysa's Statement of Material Facts ¶ 151.   Grendysa rode to the Deptford Police Department in Wentz's patrol car.  Troso's Statement of Material Facts ¶ 48.  While at the Deptford Police Department, Grendysa, a diabetic, was permitted to administer an insulin injection and was served a meal.  Id. ¶ 49.  At that time, Grendysa said to Troso:  "I think I want a lawyer."  Id. ¶¶ 47-50.  After Grendysa ate his meal, Troso read Grendysa the Miranda warning, at which time Grendysa asked if could stop answering questions at any time.  Id. ¶¶ 54-56.  Upon being assured that was accurate, Grendysa signed the Miranda card indicating that he was read his rights and that he understood them, and also agreed to speak with the Detective.  Id. ¶¶ 53-57.  At this point, Troso began questioning Grendysa.  Id. ¶ 58.

During Grendysa's interrogation, he made the following statements to Troso:

- "Oh, I said one time when we were kids we used to go out ... and get the largest girl to come home with you ... it was a contest."  Tr. of Troso's Interview of Grendysa at 27.

- "[I]f somebody did that to me ... I'd take a bat with nails in it and I would have taken care of him or whatever." Id. at 30.

- "I told them that a friend of mine said, made up that story [about taking a girl out on a boat and telling her to do it or swim]." Id. at 31.

- "I mean allowing someone to see a girl in a ... cheerleading uniform or a bathing suit, you, you know, fine.  You know the school might not like it..."  Id. at 47.

- "[A] couple of times after school, I went to a ... *Playboy* or something like that.... [T]here was no kids around at all." Id. at 62.

8

- "Like they had Pamela Lee and her husband ... some type of video." Id. at 64.

- "[T]wo students may have. Billy Darrah and Kevin Lickfield.  Being that they were the older students in the classroom." Id. at 65. "Those two ... I know saw it ... they popped in on me one time at lunch."   Id. at 66.

- "[I]t would appear to be nudity but you didn't see any body parts ... like a picture of girl in a bathtub with these huge suds ... up to her neck.   You can tell she probably didn't have any clothes on underneath it ... you see like her knees sticking out." Id. at 69. "[L]ess than half a dozen times [the students saw erotic websites that did not contain nudity].  Id. at 70.

- "[T]he woman who I go out with now, she came in one day to take her son after school ... I had printed out a couple pictures ... of girls in bathing suits and she even saw it."  Id.

- "[L]ooking at a pretty girl in a bathing suit, what's the big whoop?"  Id.

- "I remember a site and I remember who it was ... Cindy Margolis ... she wears these provocative outfits....No nudity."  Id.

- "[I was showing the students] girls in bathing suits."  Id. at 71.

- "[T]he Dallas Cowboys Cheerleaders ... we probably went to that site a half dozen.... Sports Illustrated [Swimsuit website] ... a few times." Id. at 72.

- "A picture of [Cindy Margolis] ... laying on a table and maybe laying on the beach."  Id.

- "Once [I printed a picture of] Margolis ... I gave it to [Kevin Lickfield] after school."  Id. at 73.

Approximately forty-five minutes after the interview ended, Grendysa was arrested.  Troso's Statement of Material Facts at ¶ 65.

9

Two days later, on December 17, 1999, Troso interviewed Kevin Lickfield, another former student of Grendysa's.  Id. at ¶ 67.  Lickfield denied many of the allegations against Grendysa, Tr. of Troso's Interview of Lickfield at 5, 7, 11, 13, 15, 21, 22 , 23, 30, and reported that he was uncomfortable being questioned since his mother was dating Grendysa, id. at 16, 32.  Despite his discomfort at being interviewed about Grendysa, Lickfield revealed that Grendysa accessed the Sports Illustrated Swimsuit Edition website, id. at 9, and that Grendysa told the class the "do it or swim" story, id. at 22.  Lickfield  also stated that he probably saw a pornographic website in Grendysa's classroom during the previous school year, id. at 27.  Three months later, on March 22, 2000 Troso interviewed Gary Hoffman, the Vice Principal of the Marlton Middle School, and Daniele, the curriculum supervisor.  Id. at ¶¶ 68-71.  Daniele told Troso that she recalled one incident where she observed a student accessing the Internet by using Grendysa's password.  Id. at ¶ 70.

On May 16, 2000, Troso testified before a Grand Jury, which indicted Grendysa on four counts of Endangering the Welfare of a Child and one count of Official Misconduct. Id. at ¶¶ 72-74.  However, the statements Grendysa made on the date of his arrest to Troso were ultimately suppressed on August 18, 2000 by the Honorable John Sweeney, J.S.C., who found that Troso's questioning of Grendysa without an attorney after Grendysa said, "I think I want a lawyer," was "a clear case of a violation of a person's Fifth Amendment Rights."  Id. ¶ 76; Troso's Ex. JJ, Tr. of Mot. to Suppress Before Judge Sweeney at 16:6-21.  For reasons not fully disclosed in the record, the charges in the indictment were ultimately dismissed and pursuant to a plea agreement, Grendysa entered a plea of guilty on August 27, 2001, to the Unauthorized Use of a Computer in violation of N.J.S.A. 2C:20-32; he was sentenced to one year probation, various fines, and

restitution to the Evesham Township Board of Education in the amount of $2,500. Troso's Ex. KK, Grendysa's Plea Agreement; Troso's Ex. LL, Tr. of Grendysa's Plea and Sentence.

## B. Relevant Procedural History

On December 12, 2001 Plaintiff filed a complaint against ETBE, Bigley, Summers, Moore, Daniele, and Troso for malicious prosecution pursuant to 42 U.S.C. § 1983, and state law claims for malicious prosecution, inter alia, against Brewer, Brewer's guardians,[5] Darrah, Darrah's guardians,[6] Hicks, Hicks's guardians,[7] Hubbard, Hubbard's  guardians[8] and Troso in the Superior Court of New Jersey, Law Division, Cape May County.  ETBE, Bigley, Summers, Moore and Daniele removed the case to the United States District Court, District of New Jersey on April 3, 2002, and the case was assigned to the Honorable Joseph H. Rodriguez, U.S.D.J.  On December 2, 2002, the case was reassigned to Honorable Stephen M. Orlofsky, U.S.D.J.; it was reassigned to me on January 9, 2003.  On February 24, 2004, Brewer, Hard, Darrah and Bradley filed a third amended answer, asserting a counterclaim against Grendysa for intentional infliction of emotional distress, crossclaims against ETBE, Bigley and Moore for intentional infliction of emotional distress, negligent infliction of emotional distress, and a claim pursuant to the New Jersey Law Against Discrimination, a third party claim against CyberPatrol From SurfControl[9]

---

[5]Brewer's guardian is his mother, Carol Hard.

[6]Darrah's guardian is his father, William Bradley.

[7]Hicks's guardians are his parents, Robert and Julia Hicks (the "Hickses").

[8]Hubbard's guardians are his aunt and uncle, the Daraios.

[9]CyberPatrol is a software program designed to help prevent the accessing of websites with questionable or inappropriate content.  Brewer, Hard, Darrah and Bradley allege that ETBE purchased the CyberPatrol software and installed it on its computers, and that therefore,

and T.L.C. Funding, Inc.-MA[10] for negligence and product liability, and third party claims against certain John Does.[11]

Shawn Hicks, Robert Hicks and Julia Hicks filed their motion for summary judgment against Grendysa on February 9, 2005.  CyberPatrol from SurfControl filed its motion for summary judgment against Brewer, Hard, Darrah and Bradley on February 14, 2005.  ETBE, Moore, Daniele, Summers and Bigley filed their motions for summary judgment against Grendysa and against Brewer, Hard, Darrah and Bradley on February 15, 2005.  Brewer, Hard, Darrah and Bradley filed their motion for summary judgment against Grendysa on February 16, 2005.  Detective Troso filed his motion for summary judgment against Grendysa on February 17, 2005.  Oral argument on the motions was held on September 9, 2005.  At oral argument, the Court granted the motion for summary judgment filed by CyberPatrol from SurfControl against Brewer, Hard, Darrah and Bradley.  CyberPatrol from SurfControl's dismissal from the case was memorialized in an Order dated September 13, 2005.

---

CyberPatrol should have prevented the websites in question from being accessed from one of the computers in Grendysa's classroom.

[10]According to the third party complaint, which was filed on February 24, 2004, ETBE purchased the CyberPatrol software from T.L.C. Funding, Inc.-MA.  Third Amended Answer, Separate Defenses, Counterclaim, Third Party Complaint, Crossclaims, and Demand for Jury Trial at 17, ¶ 4.  However, T.L.C. Funding, Inc.-MA. was never served with the Third Party Complaint against it.

[11]The caption of the students and parents' "Third Amended Answer, Separate Defenses, Counterclaim, Third Party Complaint, Crossclaims, and Demand for Jury Trial" denominates claims against certain John Does.  However, the students and parents do not assert any cognizable claim against any John Doe and, to this date, have never moved to identify them.

**II. DISCUSSION**

**A.  SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To avoid summary judgment the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324.  A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In evaluating the evidence, the Court must "view the inferences to be drawn from the underlying facts in the light most favorable to the [nonmoving] party." Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002) (quoting Bartnicki v. Vopper, 200 F.3d 109, 114 (3d Cir. 1999)).  Conclusory allegations do not meet the non-moving party's duty to set forth specific facts showing that a genuine issue of material fact exists and a reasonable factfinder could rule in its favor.  Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999).

**B.  PLAINTIFF'S § 1983 MALICIOUS PROSECUTION CLAIM AGAINST DETECTIVE TROSO**

Grendysa has brought a claim for malicious prosecution against Detective Troso in his personal capacity, see Pl.'s Opp. Br. at n. 2, pursuant to 42 U.S.C. § 1983.  This claim arises out of Grendysa's arrest, indictment, and resulting prosecution.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United

States, and must show that the alleged deprivation was committed by a person acting under color

of state law." West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

**1) Qualified Immunity**

"Qualified immunity shields public officials performing discretionary functions from §

1983 liability 'insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.' " Abbott v. Latshaw, 164

F.3d 141, 148 (3d Cir.1998)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73

L.Ed.2d 396 (1982)). The qualified immunity inquiry is a two step process.  First, the Court must

determine whether the Defendant Troso violated "clearly established" rights. Id.  This entails a

finding of a constitutional or statutory violation as well as a finding that the violated right was

clearly established at the time of the violation.  As a general matter, a right is "clearly

established" when the contours of the right are "sufficiently clear that a reasonable official would

understand that what he is doing violates that right." Saucier, 533 U.S. at 202. To be "clearly

established" does not mean that "the very action in question has previously been held unlawful,"

Hope v. Pelzer, 536 U.S. 730, 739 (2002); rather it merely means that in light of preexisting law,

the unlawfulness of the official's conduct was reasonably and objectively apparent. Wilson v.

Layne, 526 U.S. 603, 615 (1999); Doe v. Delie, 257 F.3d 309, 318 (3d Cir.2001)(quoting Good

v. Dauphin County Social Servs. for Children & Youth, 891 F.2d 1087, 1092 (3d

Cir.1989))("qualified immunity applies if 'reasonable officials in the defendants' position at the

relevant time could have believed, in light of what was in the decided case law, that their conduct

would be lawful'."). The Supreme Court has made clear that "officials can still be on notice that

their conduct violates established law even in novel factual circumstances." Hope, 536 U.S. at

14

741.  Here, in connection with Plaintiff's arrest, there is a clearly established right under the Fourth Amendment to be free from arrest without probable cause. See, e.g., Groh v. Ramirez, 540 U.S. 551, 563-64 (2004); Saucier v. Katz, 533 U.S. 194, 207-08 (2001).

Second, the court must determine whether a reasonable person would have believed that his or her conduct deprived the plaintiff of his or her constitutional rights. Abbott, 164 F.3d at 148.  This is an objectively reasonable standard.  See United States v. Leon, 468 U.S. 897, 921 (1984).  "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (citation omitted); see also Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir.1997).  The question, therefore, is whether a reasonable detective would have believed there was probable cause to arrest Grendysa.

It is black letter law that "[p]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d. Cir. 1995); see also  Gerstein v. Pugh, 420 U.S. 103, 111 (1975).  This standard is meant to "'safeguard citizens from rash and unreasonable interferences with privacy' " while simultaneously providing "leeway for enforcing the law in the community's protection." Pugh, 420 U.S. at 112 (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)). The Third Circuit has stated that courts must look at the "totality of the circumstances" and use a "common sense" approach in assessing the issue of probable cause. United States v. Glasser, 750 F.2d 1197, 1205 (3d Cir.1984).  Thus, it is the function of the Court to determine whether the objective facts available to Detective Troso at the time he arrested

15

Grendysa were sufficient to justify a reasonable belief that Grendysa had committed the crimes of endangering the welfare of four children and official misconduct.  See Merkle v. Upper Dublin School Dist., 211 F.3d 782, 789 (3d Cir. 2000).

Here, Grendysa does not dispute that (i) the weblogs revealed that a computer in his classroom had accessed websites inappropriate for children; (ii) Grendysa's attendance records revealed to Troso that Grendysa was not absent on days on which these sites were accessed, and further, while Plaintiff disputes the veracity of the statements given by Brewer, Darrah, Hicks and Hubbard to Troso, he does not dispute that they made these statements to Troso.  Instead, Plaintiff is arguing that, notwithstanding the existence of the weblogs, the attendance records and the students' statements, Troso's belief that there was probable cause to arrest Grendysa was objectively unreasonable as a result of Troso's "incomplete and inept investigation."  Pl.'s Opp. Br. at 17.

Plaintiff faults the detective's failure to seize the computer at issue and independently examine its contents, as well as Troso's failure to fully investigate the backgrounds of the students making the accusations.[12]  Indeed, it is undisputed that Troso did not seize the computer

---

[12]Plaintiff does not contend that Troso's violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1966) is actionable under § 1983.  See Pl.'s Opp. Br. at 17.  However, Plaintiff argues that the Miranda violation is "evidential to substantiate the incomplete and inept investigation undertaken by Troso."  Id.  "[V]iolations of the prophylactic Miranda procedures do not amount to violations of the Constitution itself.  Giuffre v. Bissell, 31 F.3d 1241, 1256 (3d Cir. 1994).  Moreover, the "right to counsel" during custodial interrogation recognized in Miranda is merely a procedural safeguard, and not a substantive right."  Id.  As such, "the remedy for a Miranda violation is the exclusion from evidence of any compelled self-incrimination." Warren v. City of Lincoln, 864 F.2d 1436, 1442 (8th Cir. 1989).  Here, the sequence of events that gave rise to the Miranda violation–namely Grendysa's statement, "I think I want a lawyer," Grendysa's eating of a meal, Troso's subsequent reading to Grendysa of the Miranda warning, Grendysa's signing of the Miranda card indicating that he was read his rights and that he

16

at issue.  In that connection, Plaintiff argues that Troso's failure to seize the computer violated

the policies and procedures in the New Jersey Department of Law & Public Safety's Computer

Evidence Search & Seizure Manual.  However, that manual is dated "April 2000" and therefore

did not exist and was not in effect when Troso conducted his investigation of Grendysa in

December 1999, see New Jersey Department of Law & Public Safety, Division of Criminal

Justice, Computer Evidence Search & Seizure Manual, (April 2000),

http://www.state.nj.us/lps/dcj/pdfs/cmpmanfi.pdf.  Moreover, while Plaintiff argues that Troso

should have done more to investigate the students and the veracity of their statements, each of the

students corroborated the statements of the others.  In fact, this corroboration included students

who did not voluntarily come forward.  Furthermore, I have reviewed the students' interview

statements; they appear complete and do not evidence any suggestions by Troso to the students as

to what answers they should give.

       In sum, while Troso's investigation might have been better or more complete had he (i)

seized the computer, (ii) independently examined the contents of the computer himself or hired

an expert to do so, or (iii) further researched the backgrounds of the students making the

accusations, the fact that Troso did not undertake the best possible investigation does not

preclude a finding of probable cause. See Merkle v. Upper Dublin School Dist., 211 F.3d 782,

786 (3d Cir. 2000).

---

understood them, and finally, Troso's questioning of Grendysa–shed no light on the issue before
the Court: whether Troso's belief that there was probable cause to arrest Grendysa was
objectively unreasonable.  Furthermore, the Court does not find that the suppression of
Grendysa's statements is evidential on the question of whether Troso's investigation was
incomplete and inept.

In Merkle, the plaintiff, a middle school art teacher removed some extra art supplies from a supply closet and decided to donate them to a local community center.  Id. When the school's principal, Ms. Thomas, witnessed the plaintiff loading the supplies into her car, she asked if the plaintiff had authorization to donate these materials. Merkle responded that she did not, and at the principal's suggestion, returned the materials to the school so that the principal could call the school district's business manager to ascertain if there was a procedure for donations of school property.  Id. at 786-87.  Pursuant to the instructions of the superintendent, the principal called the police and reported the incident.  Id. at 787.  Detective Hahn met with the principal on the day after the incident. Id. The principal reported to Hahn that she witnessed Merkle loading her car with materials that did not belong to her and that Merkle stated that she intended to give the property to the community center.  Id. at 787, 790. She also explained to Hahn that the District wanted "charges filed" against Merkle.  Id. at 787.  Based solely on the information he learned from Thomas, the principal, Hahn swore out an affidavit of probable cause for Merkle's arrest, as well as a criminal complaint against her.  Id. Hahn arrested Merkle on the criminal complaint, which charged the plaintiff with theft, receiving stolen property, and criminal attempt to commit theft. Id. A judge found that a prima facie case existed on these charges.   Id. However, before a trial date was set, Merkle's motion for habeas corpus was granted and the charges against her dismissed.  Id. at 788.

Following the criminal dismissal, Merkle filed suit, asserting, inter alia, a claim for § 1983 malicious prosecution against the detective, Hahn.  Id.  The question before the Third Circuit  was whether a reasonable person in Hahn's position could have concluded, based on his knowledge, that Merkle had committed a crime. Id. at 790.  The court found that Hahn possessed

knowledge of a credible report from a credible eyewitness (the principal) that Merkle did intend

to deprive the District of its property and held that a reasonable jury could not find that Hahn

lacked knowledge of sufficient facts to establish probable cause to arrest Merkle for the crime of

theft by taking**.** Id.

Significant to the case before this Court, one of the arguments advanced by the plaintiff

was that Detective Hahn lacked probable cause because he failed to interview other witnesses,

such as the vice principal, another art teacher, or the plaintiff herself, prior to making the arrest.

Id. at 790 n. 8. However, according to the Third Circuit, the detective "had every reason to

believe a credible report from a school principal who witnessed the alleged crime. This report

alone sufficiently established probable cause. [The detective] was not required to undertake an

exhaustive investigation in order to validate the probable cause that, in his mind, already

existed." Id. (citing Gramenos v. Jewel Cos., Inc., 797 F.2d 432, 439 (7th Cir.1986), cert. denied,

481 U.S. 1028 (1987); Morrison v. United States, 491 F.2d 344, 346 (8th Cir.1974)); see also

Potts v. City Of Philadelphia, 224 F.Supp.2d 919, 934 (E.D. Pa. 2002) ("A police officer, after

all, is not obligated 'to conduct a mini-trial' before arresting a suspect.")(quoting Brodnicki v.

City of Omaha, 75 F.3d 1261, 1264 (8th Cir.1996); Ricciuti v. N.Y.C. Transit Auth., 124 F.3d

123, 128 (2d Cir.1997) ("Once a police officer has a reasonable basis for believing there is

probable cause, he is not required to explore and eliminate every theoretically plausible claim of

innocence before making an arrest.").

On the facts presented here, which include the weblogs showing that sexually

inappropriate websites had been accessed, the attendance records for Grendysa on those dates,

and the students' corroborative interview statements, a prudent detective could reasonably have

believed that Grendysa had committed the offenses of endangering the welfare of four children and official misconduct.[13]   Therefore, Troso is entitled to qualified immunity.

### 2) § 1983 Malicious Prosecution

A second basis for the dismissal of Plaintiff's claim against Troso is Plaintiff's failure to establish the prima facie elements of a malicious prosecution claim under § 1983.   To prevail on such a claim, a plaintiff must show all of the following: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty as a consequence of the criminal proceeding. Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).   Since the Court has already determined that Troso possessed probable cause to arrest Grendysa, Plaintiff cannot satisfy the "lack of probable cause" element of the prima facie case for § 1983 malicious prosecution; this is fatal to Grendysa's cause of action.   Nonetheless, the Court will review several of the other factors which Plaintiff is also unable to prove.[14]

---

[13]Grendysa's own statements to Troso, in which he admitted to accessing certain sexually inappropriate sites on the school's computer--and indeed, that students may have walked in on him at one time or another--lend further support for Troso's determination of probable cause. Although these statements were suppressed in the criminal prosecution against Grendysa, they are likely admissible in the suit for malicious prosecution.   While there are many cases declining to extend the exclusionary rule to civil cases, see, e.g., Townes, 176 F.3d 138, 146 (2d Cir. 1999) (declining to extend exclusionary rule to § 1983 suit for, inter alia, malicious prosecution), the Court need not decide that issue, having already found that probable cause existed independent of Grendysa's statements.

[14]Plaintiff is able to satisfy two of the prongs: that there was a deprivation of liberty and that Troso initiated the criminal proceeding.   To satisfy the "deprivation of liberty" element, plaintiff must establish both the common law elements of the tort and "some deprivation of liberty that rises to the level of Fourth Amendment 'seizure ...' " See Torres v. McLaughlin, 163 F.3d 169, 175 (3d Cir.1998).   This is because the type of constitutional injury which the Fourth

With regard to the favorable termination prong, in <u>Hector v. Watt</u>, 235 F.3d 154, 156 (3d Cir. 2000), the Third Circuit held that a plaintiff claiming malicious prosecution must prove actual innocence as an element of his <u>prima facie</u> case.  Notwithstanding his plea of guilty to the Unauthorized Use of a Computer in violation of N.J.S.A. 2C:20-32, Grendysa argues that he has

---

Amendment is intended to redress is "the deprivation of liberty accompanying the prosecution," rather than the prosecution itself. <u>Gallo v. City of Philadelphia</u>, 161 F.3d 217, 222 (3d Cir.1998). Because "the tort of malicious prosecution concerns the 'perversion of proper legal procedures,' [plaintiff] must show that he suffered a seizure as a consequence of a legal proceeding." <u>Id.</u> (citing <u>Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 116 (2d Cir.1995)); <u>see also</u> <u>Nieves v. McSweeney</u>, 241 F.3d 46, 54 (1st Cir. 2001).

In <u>Gallo</u>, the Third Circuit, noting that it was a "close call" found that the conditions of plaintiff's pretrial release effected a seizure despite the fact that plaintiff was never arrested, detained, or handcuffed. <u>Gallo</u>, 161 F.3d at 222. Plaintiff did, however, have to "post a $10,000 bond," "attend all court hearings," communicate with pretrial services "on a weekly basis," and "was prohibited from traveling outside New Jersey and Pennsylvania." <u>Id.</u> Likening these conditions to the "seizure" which takes place upon a <u>Terry</u> stop, the Third Circuit held that plaintiff's "physical motion was subjected to authority that had the effect of making him halt" and found a seizure to have taken place. <u>Id.</u> at 223. Here, Plaintiff's arrest, which was made pursuant to a warrant and occurred before the filing of the criminal complaint, can serve as the basis for his malicious prosecution claim. <u>See</u> <u>Mantz v. Chain</u>, 239 F.Supp.2d 486, 502 (D.N.J. 2002)(citing <u>Nieves</u>, 241 F.3d at 54). He also had to attend all court hearings, paid a $50,000 cash bond, and as conditions of bail, was prohibited from contacting the students at issue and from setting foot in Marlton Middle School.  Plaintiff also contends that he was handcuffed, which, for the purposes of this motion, the Court will accept as true.  Therefore, the Court finds that the "deprivation of liberty" element of § 1983 malicious prosecution is satisfied**.**

Plaintiff must also show that Troso initiated a criminal proceeding against him. According to the Restatement (Second) of Torts § 654, criminal proceedings are instituted when (a) process is issued for the purpose of bringing the person accused of a criminal offense before an official or tribunal whose function is to determine whether he is guilty of the offense charged, or whether he shall be held for later determination of his guilt or innocence; or (b) without the issuance of process an indictment is returned or an information filed against him; or (c) he is lawfully arrested on a criminal charge.  Restatement (Second) of Torts § 654.  Here, Troso completed an Affidavit of Probable Cause as to Grendysa and arrested Grendysa; thus, this element is satisfied.

satisfied the innocence element of the prima facie case because the factual predicate for his guilty

plea was his use of a computer "on personal business during school hours," and that the guilty

plea "had no relationship whatsoever" to the Indictment or criminal complaints filed against him.

However, Plaintiff has not offered any evidence in support of this contention other than his bald

statement.  The transcript of the plea colloquy does not reveal using the computer for personal

business was the factual basis for his crime as opposed to his admission that he had accessed

sexually related websites.  Thus, without more, the fact that he pleaded to a lesser crime does not

demonstrate the actual innocence that Plaintiff is required to show under Hector.  As such,

Plaintiff cannot satisfy the "favorable termination" element of the prima facie case for § 1983

malicious prosecution.

Finally, Plaintiff must show that Troso acted maliciously or for a purpose other than

bringing him to justice.  He does not identify any evidence indicating malice or improper purpose

on the part of Troso.  Therefore, Plaintiff cannot satisfy the "malice" element of the prima facie

case for § 1983 malicious prosecution.

Thus, the Court having determined that Troso is entitled to qualified immunity and that

Plaintiff has not satisfied the elements of the prima facie case for § 1983 malicious prosecution,

Detective Troso's motion for summary judgment is granted.

## C.  PLAINTIFF'S § 1983 MALICIOUS PROSECUTION CLAIM AGAINST BIGLEY, MOORE, SUMMERS AND DANIELE

### 1) Qualified Immunity

Plaintiff has also brought a claim for malicious prosecution against Bigley, Moore,

Summers and Daniele pursuant to 42 U.S.C. § 1983.  These Defendants argue that they are

entitled to qualified immunity.  Plaintiff does not address the qualified immunity argument advanced by these defendants in his Opposition and does not identify a clearly established Constitutional right that they violated.  Even if the Court were to assume, <u>arguendo</u>, that Plaintiff's Fourth Amendment right to be free from arrest without probable cause was violated by Troso, Plaintiff has not demonstrated that Bigley, Moore, Summers and Daniele played a role in that constitutional violation.  The conduct that Plaintiff has identified–namely, their alleged failures to "properly preserve[] the computer evidence at issue," " investigate[] the allegations properly or competently," and "provide[] the necessary background of the accusers to Troso," Pl.'s Opp. Br. at 24–was not unlawful.  Certainly, the actions they took in response to the students' allegations were objectively reasonable.  The information was reported up the school chain to Bigley, the Superintendent, who then directed the technology director, Summers, to examine the computers.  After discovering that sexually inappropriate websites had been accessed on a computer from Grendysa's classroom, it was confirmed that Grendysa had been working on those dates.  Moreover, Plaintiff has not identified any duty imposed upon the employees of the school district to conduct an investigation as though they were detectives, police officers or prosecutors.  As a result, they are entitled to qualified immunity.

### 2) § 1983 Malicious Prosecution

As stated above, to prevail on a malicious prosecution claim under § 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty as a consequence of the criminal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

My determination that Plaintiff did not satisfy the "favorable termination" element of the prima facie case for § 1983 malicious prosecution against Troso renders Grendysa's § 1983 malicious prosecution claim against Bigley, Moore, Summers and Daniele deficient and worthy of dismissal on that basis alone.

The issue of whether the Evesham Defendants had probable cause to pursue Grendysa's prosecution is an inquiry independent of my holding that Troso acted on the reasonable belief that he had probable cause to arrest Grendysa.  "Probable cause means 'facts and circumstances ... that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" Camiolo v. State Farm Fire and Cas. Co., 334 F.3d 345, 363 (3d Cir. 2003) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)).

Grendysa has not submitted any evidence that even suggests that Bigley, Moore, Summers and Daniele possessed an unreasonable belief that he committed the offense.  He does offer the report of a computer expert opining that the "Evesham Township School District" was inadequately maintaining and monitoring the security of its computer network, Pl.'s Ex. P.  However, if Detective Troso is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed," Merkle, 211 F.3d at 790 n. 8, such a duty cannot be imposed on Bigley, Moore, Summers and Daniele, who are not law enforcement officers or employees.  Moreover, even if Bigley, Moore, Summers and Daniele[15] contributed to

_____

[15]Even though Daniele told Troso that she recalled one incident where she observed a student accessing the Internet by using Grendysa's password, Troso's Statement of Material

the problems associated with Evesham's computer/Internet network, such action or inaction

bears no relationship to the issue of probable cause.  Moreover, the Evesham Defendants merely

gave the information about Grendysa to the Prosecutor's Office; they did not direct or request

that any particular action be taken.

Furthermore, there is no evidence of any malice or improper purpose on the part of

Bigley, Moore, Summers or Daniele.  In Merkle, the Third Circuit concluded that a jury could

find that the defendant superintendent, and through him the defendant school district, acted

maliciously and retaliatory in pressing unfounded criminal charges against Merkle because a jury

could reasonably infer that Merkle's protected speech regarding the school district's inclusion of

"Huckleberry Finn" in the school's curriculum at an open meeting and her outspokenness about

the need for greater cultural sensitivity in the district were motivating factors in the course of

action. Merkle, 211 F.3d at 795.  Here, Grendysa was no longer an employee of ETBE or a

teacher at Marlton Middle School when the school's internal investigation began.  Indeed, there

is no evidence of any continuing contact between ETBE and Grendysa.  As result, he would be

hard pressed to argue that Bigley, Moore, Summers and Daniele were trying to terminate him or

otherwise punish him.  Indeed, he has not advanced such an argument, nor has he shown any

---

Facts ¶ 70, this alone cannot defeat the motion as to Daniele.  It is Plaintiff's burden to
demonstrate that Daniele possessed an unreasonable belief that Grendysa had committed the
offenses of endangering the welfare of children and official misconduct.  According to the
school's computer policy, Grendysa was supposed to keep his password to himself and from his
students in order to make sure that he, and not his students, were accessing the Internet from the
school computers.  Dep. Tr. of Daniele at 27:6-12; Dep. Tr. of Summers at 23:10-26:22.  It is
the opinion of this Court that, by itself, the fact that Daniele witnessed a student accessing the
Internet by using Grendysa's password in violation of school policy does not demonstrate that
Daniele possessed an unreasonable belief that Grendysa had committed the offenses at issue.

malice or improper purpose on their part.  Therefore, the Court having determined that Bigley, Moore, Summers and Daniele are entitled to qualified immunity and that Plaintiff has not satisfied the elements of the prima facie case for § 1983 malicious prosecution, the motion for summary judgment filed Bigley, Moore, Summers and Daniele against Grendysa is granted.

## D.  PLAINTIFF'S § 1983 CLAIM AGAINST THE EVESHAM TOWNSHIP BOARD OF EDUCATION

In Plaintiff's Complaint, he alleges:

Defendant [ETBE] did, throughout the timeframe set forth above, by and through the individually named defendants herein, perpetrate policy, custom and practices within the [ETBE], designed to, and having the intent of and recklessly creating a deprivation of the plaintiff's constitutional rights by falsely and affirmatively providing information and alleged evidence to law enforcement that the individual defendants knew to be false for no other reason than to cause the plaintiff to occupy the status as a scapegoat for the individually named defendants and the School District's own gross negligence in failing to properly implement, superintend and maintain a cyberpatrol Internet system to protect its students and the plaintiff....

Defendants did purposely and knowingly create a custom, policy and practice in publicizing plaintiff's alleged crimes, in the media, in the letters distributed to parents and students of the School District, all for the purpose of intentionally and recklessly depriving the plaintiff of his constitutional rights and proximately causing the plaintiff injuries and damages aforenoted.

Pl.'s Compl.at 9-10.

In his Opposition Brief, Plaintiff explains: "The cause of action against ETBE does not stem from its reporting of the allegations to law enforcement.  Instead, it stems from the lack of providing a full and fair picture to law enforcement as it relates to the background of students making complaints, the inadequacies of preserving evidence that might substantiate the charges or exculpate Grendysa, and the incompleteness or lack of an internal investigation," Pl.'s Opp. Br. at 23.  He also quotes language from cases discussing the "failure to train" and "deliberate

indifference" doctrines of municipal liability under § 1983, and argues that the fact that Superintendent Bigley did not have Summers access and preserve the entire school year's worth of weblogs, which were automatically deleted and lost on December 31, 1999, deprived him of his constitutional rights.

There can be no municipal liability under § 1983 where the claim is based on the theory of respondeat superior.  Monell v. New York City Dept. of Social Serv., 436 U.S. 658, 691 (1978).  A board of education constitutes a municipal entity, see, e.g., Carlino v. Gloucester City High School, 57 F.Supp.2d 1, 33 (D.N.J. 1999), and Monell has been interpreted as applying to boards of education.  See, e.g., K.P., ex rel. S.C. v. Corsey, 228 F.Supp.2d 547, 552 (D.N.J. 2002)(rev'd in part on other grounds by K.P. v. Corsey, 77 Fed. Appx. 611 (3d Cir. Oct 14, 2003).  As a result, to the extent that Plaintiff is asserting a malicious prosecution claim against ETBE, that claim is dismissed, since ETBE cannot be vicariously liable for its employees' torts under Monell, and because the Court has already found that Plaintiff's malicious prosecution claim against Bigley, Moore, Summers and Daniele cannot survive summary judgment.

ETBE may only be held liable if it acted in one of the following three ways: (1) adopted an official policy that deprives citizens of their constitutional rights, Monell, 436 U.S. at 694; (2) tolerated or adopted an unofficial custom that results in the unlawful stripping of constitutional rights, Natale v. Camden County Correctional Facility, 318 F.3d 575 (3d Cir.2003); or (3) failed to "train, supervise, or discipline" its employees so as to prevent them from unlawfully depriving citizen of their constitutional rights, City of Oklahoma v. Tuttle, 471 U.S. 808 (1985); see also Karen M. Blum and Kathryn R. Urboyna, Federal Judicial Center, Section 1983 Litigation 58-59 (1998).

Plaintiff's most recently stated basis for his § 1983 claim against ETBE–"the lack of

27

providing a full and fair picture to law enforcement as it relates to the background of students making complaints, the inadequacies of preserving evidence that might substantiate the charges or exculpate Grendysa, and the incompleteness or lack of an internal investigation," Pl.'s Opp. Br. at 23–does not suggest that an official policy to deprive citizens of their civil rights has been adopted or exists.  Therefore, the first type of liability is not implicated here.

Yet, in Natale v. Camden County Correctional Facility, 318 F.3d 575, 584 (3d Cir. 2003), the Third Circuit court explained that "a policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."  Id.  Plaintiff identifies as the "policy and practice" that Summers and Bigley did not access or preserve the full year of weblogs for the 1998-1999 school year.  However, Grendysa admits that he is the only "victim" of this "policy."

Plaintiff also argues that the existing document and weblog retention practice is so inadequate that it violated his constitutional rights.  However, nowhere has he identified or demonstrated what about the alleged unofficial policy or custom is unconstitutional; what constitutional rights it caused to be violated; how or why any need to act to control Bigley's agents was obvious; that a constitutional violation was likely to occur as a result of the unofficial custom or policy; or how Bigley's alleged inaction constitutes deliberate indifference.

Furthermore, to succeed on a § 1983 claim, a plaintiff must show that there is an "affirmative link" or "direct causal link" between the alleged policy and the constitutional violation or deprivation. Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir.1996); Brown v.

28

<u>Commonwealth of Pennsylvania, Dept. of Health Emergency Medical Services Training</u>

<u>Institute</u>, 318 F.3d 473, 482 (3d Cir. 2003) (citing <u>City of Canton v. Harris</u>, 489 U.S. 378, 385

(1989).  The policy must be the "moving force" behind the deprivation in order for liability to

attach. <u>City of Canton</u>, 489 U.S. at 390.   Assuming, <u>arguendo</u>, that a policy exists, Plaintiff does

not provide any evidence that adherence to this policy has caused the unconstitutional

deprivation of rights in this or other instances.

Moreover, the simple act of choosing one policy over another is not enough to make a

municipality or its employees liable for resultant harms. <u>Id.</u> at 392.  In <u>City of Canton</u>, the

Supreme Court rejected liability based on the municipality's decision to not implement an

alternative policy. <u>Id.</u> at 397.  The Court explained that to allow lawsuits to succeed based on

pure speculation that an alternative policy could have yielded different results would create a

policy of "de facto respondeat superior" and engage courts in "the endless exercise of second-

guessing municipal employee-training programs." <u>Id.</u>  Therefore, Plaintiff's suggestion that a

different document and weblog retention policy would have prevented whatever harm befell him

cannot be the basis for denying ETBE's motion, nor is it supported by the evidence.

The final type of § 1983 liability exists when a municipality fails to train, instruct,

counsel, supervise and discipline officers. <u>Id.</u> at 387 (finding municipal liability under § 1983

where supervisors failed to properly train employees and this failure resulted in the

unconstitutional deprivation of rights). This type of liability, referred to as "failure to train," is

reserved only for those instances where the municipality acted with "deliberate indifference to

the rights of persons." <u>Id.</u> at 388.  "Findings of deliberate indifference, as a matter of law, require

that there be a history of unconstitutional behavior by municipal employees"and "cannot be

established based solely on one incident." Labo v. Borger, No. 02-3975, 2005 WL 1971867, *3 -

5 (D.N.J. Aug. 15, 2005).  Therefore, to the extent that Plaintiff's claim is for failure to train, that

claim cannot stand, because Plaintiff admits that he is the first and only "victim."  Moreover,

Plaintiff does not point to any actual inadequate training of any of the relevant ETBE employees,

let alone any manifestation of deliberate indifference.[16]  The evidence presented reveals no

previous incidents of a similar nature involving any teachers to whom the ETBE was indifferent.

Nor could the ETBE or Bigley have had any reason to know or believe that Summers or someone

else was being inadequately supervised.

Assuming, arguendo, that the ETBE or Bigley failed to adequately train or supervise any

employees, to demonstrate a municipality's failure to train or supervise amounts to deliberate

indifference, it must be shown that (1) municipal policymakers know that employees will

confront a particular situation; (2) the situation involves a difficult choice or a history of

employee mishandling; and (3) the wrong choice by an employee will frequently cause

deprivation of constitutional rights.  Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir.

1999).  Plaintiff has not shown any of the aforementioned.  He has not shown that Bigley knew

---

[16]According to Grendysa, Daniele asked him to fill out a form to have his password
changed. Dep. Tr. of Grendysa at 131:24-25.  Plaintiff avers that he "got the form, sent it to the
computer tech.  Put it in the basket.  The principal sign[ed] it.  And no one ever came."  Id. at
131:25-132:2.  However, Summers avers that it was never "reported to [him] at any time prior to
being made aware of the allegations involving Grendysa and his classroom, that any student had
inappropriately accessed the Internet" and that it was never "reported to [him], by any teacher or
other administrator, that they were requesting a change in their password because they believed
either a fellow teacher, one of their students or someone else had inadvertently gained access to
their password."  Dep. Tr. of Summers at 26:9-19. Even accepting as true, for the purposes of
this motion, that Grendysa filled out the change of password form, the form reached Summers,
and Summers never changed the password, a failure to change a computer password does not
amount to "deliberate indifference to the rights of persons."  See City of Canton, 489 U.S. at 388.

that Summers would confront a situation involving computer record retention; he has not shown that the computer record retention involves a difficult choice or history of mishandling; he has not shown that failing to retain an entire year's worth of weblogs will cause a deprivation of constitutional rights.

In sum, Plaintiff's claim against ETBE lacks clarity of form and the broad allegations from his Complaint have not been fleshed out in any way.  While discovery is complete and the case has reached the summary judgment stage, Plaintiff is still relying upon mere allegations without evidentiary support.  As a result, Plaintiff's § 1983 claim against the Evesham Township Board of Education cannot survive summary judgment.

## E.  PLAINTIFF'S MALICIOUS PROSECUTION CLAIM AGAINST DARRAH, HICKS AND BREWER

Plaintiff has also brought a New Jersey common law claim for malicious prosecution against Darrah, Hicks and Brewer.  A civil action based upon the malicious prosecution of a criminal complaint may be sustained only with proof "(1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." Myrick v. Resorts Int'l Casino & Hotel, 319 N.J.Super. 556, 563 (App. Div. 1999). Each of these elements must be established or the claim must fail. Lind v. Schmid, 67 N.J. 255, 262 (1975).

First, my determination that Plaintiff did not satisfy the "favorable termination" element of the prima facie case for § 1983 malicious prosecution against Troso renders his § 1983 malicious prosecution claim against Darrah, Hicks and Brewer deficient and worthy of dismissal

31

on that basis alone.

Second, Plaintiff's claim against Hicks is deficient because the "initiation of criminal proceedings" element of the prima facie is not satisfied here.  This element may be met by proof that defendant took some active part in instigating or encouraging the prosecution,  advised or assisted another person to begin the proceeding, ratified it when it is begun, or took any active part in directing or aiding the conduct of the case.  Epperson v. Wal-Mart Stores, Inc., 373 N.J. Super. 522, 531 (App. Div. 2004) (relying on Prosser and Keeton, The Law of Torts § 119 at 872 (5th ed., 1984)).  However, unlike Darrah and Brewer, Hicks did not speak to Moore about Grendysa.  Troso contacted Hicks and asked Hicks to answer some questions, which Hicks did; that is the extent of Hicks's role in Grendysa's prosecution.  Such conduct cannot alone satisfy this element of malicious prosecution. To hold otherwise would mean that anyone who is sought out by the police and answers their questions faces potential liability for malicious prosecution.

Third, Plaintiff cannot establish a lack of probable cause on the part of Darrah, Brewer and Hicks. "The reasonable belief which constitutes probable cause does not require [a complainant] to evaluate the totality of circumstances both inculpatory and exculpatory, as a trier of fact guided by a reasonable doubt standard." Carollo v. Supermarkets General Corp., 597 A.2d 1105, 1108-09 (N.J. Super. App. Div. 1991). "Probable cause does not depend on the state of the case in point of fact but upon the honest and reasonable belief of the party prosecuting and no more is demanded than a well-grounded suspicion or belief." Trabal v. Wells Fargo Armored Service Corp., 269 F.3d 243, 251 (3d Cir. 2001)(internal quotations and citations omitted).  The criterion is whether the accuser honestly believed on reasonable grounds the truth of the charge at the time he made the charge.  Shoemaker v. Shoemaker, 78 A.2d 605, 608 (N.J. Super. App. Div.

1951).

Here, Hicks, Brewer and Darrah were all interviewed by Detective Troso.  Their answers

to his questions were substantially similar to one another.  All three of them told Troso that

Grendysa had accessed inappropriate websites; Hicks and Darrah both specifically mentioned

"penthouse.com" by name.  All three of them told Troso that Grendysa had told them about

contests involving overweight women, and Brewer and Darrah told Troso that Grendysa had told

them about putting nails into a baseball bat.  The weblogs and attendance records further

corroborate the students' accusations.  See Discussion, Footnote 13, supra.  Plaintiff's assertion

that these students conspired to lie and get him into trouble is not supported by anything but his

bald assertion.  Indeed, he was no longer a teacher at Marlton Middle School when the students

reported these facts.  Plaintiff has failed to demonstrate that Hicks, Brewer and Darrah did not

honestly and reasonably believe their accusations and, as a result, he has not satisfied the "lack of

probable cause" element of malicious prosecution.  Therefore, Plaintiff's claim for malicious

prosecution against Hicks, Brewer and Darrah cannot survive summary judgment.

## F.  PLAINTIFF'S NEGLIGENCE CLAIM AGAINST HARD, BRADLEY AND THE HICKSES

Plaintiff has also brought a claim for negligence against the students' parents.  Plaintiff

argues in his brief that the parents did not inform Detective Troso of their children's problems,

did not reveal that the children were known to lie, and did not provide him with their records so

that he had a clearer picture of Plaintiff's accusers, and that, therefore, the parents consented to or

ratified the acts of their children and should be liable for their children's torts.   In support of his

argument, Plaintiff cites to a single New York case, DeRosa v. Smith, 729 N.Y.S.2d 191 (N.Y.

33

App. Div. 2001), which relies upon <u>Steinberg v. Cauchois</u>, 293 N.Y.S. 147 (N.Y. App.

Div.1937), a  New York case from 1937.  According to <u>Steinberg</u>, a parent may be liable for her

child's tort where the parent participates in the child's tortious act by consenting to it or by

ratifying it later and accepting the fruits. <u>Id.</u> at 149.  Assuming, <u>arguendo</u>, that this Court should

even follow <u>Steinberg</u>, there is no evidence that the parents accepted any fruits of the alleged tort

or that any fruits even existed.  Other than Plaintiff's contentions, there is no evidence that the

students lied to Detective Troso, and there is certainly no evidence that the parents ratified or

consented to the alleged fabrications.  Plaintiff cites to no case supporting his argument that the

parents had an affirmative duty to aid Troso's investigation by informing him of any problems or

issues that their children had or by providing him with their children's records, some of which

may have been confidential.  Therefore, Plaintiff's negligence claim against the students' parents

cannot survive summary judgment.

## G.  PLAINTIFF'S CLAIMS AGAINST HUBBARD, DARAIO AND DARAIO

<u>Fed. R. Civ. P.</u> 4(m) provides:

> If service of the summons and complaint is not made upon a defendant within 120
> days after the filing of the complaint, the court, upon motion or on its own
> initiative after notice to the plaintiff, shall dismiss the action without prejudice as
> to that defendant or direct that service be effected within a specified time;
> provided that if the plaintiff shows good cause for the failure, the court shall
> extend the time for service for an appropriate period.  Grendysa has never served
> the complaint on; therefore, he has exceeded the 120 day service period set out in
> <u>Fed. R. Civ. P.</u> 4(m).

Rule 4(m) governs cases originally filed in federal courts, and applies to removed cases

after the date of removal. <u>Fed. R. Civ. P.</u>  81(c); <u>Eccles v. National Semiconductor Corp.</u>, 10

F.Supp.2d 514, 519 (D. Md. 1998); <u>Alber v. Illinois Dept. of Mental Health</u>, 786 F.Supp. 1340,

1376 (N.D. Ill.1992); <u>Bruley v. Lincoln Property Co.</u>, 140 F.R.D. 452, 454-455, (D. Colo.1991);

Motsinger v. Flynt, 119 F.R.D. 373, 377 (M.D.N.C.1988)). Accordingly, Rule 4(m)'s 120-day period for service begins to run on the date of removal. Alber, 786 F.Supp. at 1376; 14A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1137 at 83 & n. 1.1 (Supp.1998).

It is well settled that district courts have discretion to dismiss a complaint where a plaintiff has failed to properly effect service on a defendant. Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir.1992). Here, Plaintiff never effected service of his complaint on Defendant James Hubbard, one of Grendysa's students, and Defendants Mr. and Mrs. Daraio, Hubbard's legal guardians. The case was removed to this Court on April 3, 2002, which is more than three years ago. Therefore, pursuant to Rule 4(m), this Court will dismiss the claim against them sua sponte. See Mettle v. First Union Nat. Bank, 279 F.Supp.2d 598, 604 (D.N.J. 2003) (citing Fed. R. Civ. P. 4(m)). Moreover, since the Court has already found that Plaintiff cannot establish the elements of a New Jersey common law claim for malicious prosecution against his students and cannot maintain a negligence claim against the students' parents, this dismissal is with prejudice.

## H.  STUDENTS AND PARENTS' THIRD PARTY CLAIM AGAINST T.L.C. FUNDING, INC.-MA.

Eren Brewer, Carol Hard, William Darrah and William Bradley filed a third party claim against T.L.C. Funding, Inc.-MA for negligence and product liability. According to the third party complaint, which was filed on February 24, 2004, ETBE purchased the CyberPatrol software from T.L.C. Funding, Inc.-MA. Third Amended Answer, Separate Defenses, Counterclaim, Third Party Complaint, Crossclaims, and Demand for Jury Trial at 17, ¶ 4. However, T.L.C. Funding, Inc.-MA. was never served with the Third Party Complaint. Since the

third party complaint was filed over nineteen months ago, this Court will dismiss the claim

against T.L.C. Funding, Inc.-MA sua sponte pursuant to Fed. R. Civ. P. 4(m).

## I.  STUDENTS AND PARENTS' THIRD PARTY CLAIM AGAINST JOHN DOES

Brewer, Hard, Darrah and Bradley have never identified or moved to substitute anyone

for the John Doe third party defendants, and discovery has concluded.   Therefore, to the extent

that Brewer, Hard, Darrah and Bradley are asserting third party claims against certain John Does,

those claims are dismissed.

## J.  THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE LAW CLAIMS

A federal court has jurisdiction over a matter pursuant to diversity or federal question

jurisdiction. See 28 U.S.C. §§ 1331, 1332. Under 28 U.S.C. § 1367, once a court has original

jurisdiction over some claims in an action, it may exercise supplemental jurisdiction over

additional claims that are part of the same case or controversy. 28 U.S.C. § 1367. However, the

exercise of supplemental jurisdiction is a matter of discretion. See United Mine Workers of

America v. Gibbs, 383 U.S. 715, 726 (1966) (stating that "pendent jurisdiction is a doctrine of

discretion, not of plaintiff's right."). Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district courts may

decline to exercise supplemental jurisdiction ... if ... the ... court has dismissed all claims over

which it has original jurisdiction."  Here, the Court does not have diversity jurisdiction because

there is no diversity of citizenship between the parties.  Moreover, there is no federal question

jurisdiction under 28 U.S.C. § 1331 because Plaintiff's § 1983 claims have been dismissed.  The

remaining state law claims are discrete from the dismissed § 1983 and malicious prosecution

claims.  They involve claims by the students and their parents against ETBE, Bigley, Moore  for

intentional infliction of emotional distress, negligent infliction of emotional distress, and a claim pursuant to the New Jersey Law Against Discrimination, as well as a claim against Grendysa for intentional infliction of emotional distress.

This Court declines to exercise supplemental jurisdiction over these remaining state law claims.  Therefore, the following state law claims are hereby remanded to the Superior Court of New Jersey, Law Division, Cape May County: 1) the crossclaims brought by Eren Brewer, Carol Hard, William Darrah and William Bradley against the Evesham Township Board of Education, Linda Moore and John Bigley, and 2) the counterclaim brought by Eren Brewer, Carol Hard, William Darrah and William Bradley against Grendysa.

## III.  CONCLUSION

For the reasons stated above, 1) the motion for summary judgment filed by Troso against Plaintiff Christopher Grendysa is granted, 2) the motion for summary judgment filed by ETBE, Moore, Daniele, Summers and Bigley against Plaintiff Christopher Grendysa is granted, 3) the motion for summary judgment filed by Shawn Hicks, Robert Hicks and Julia Hicks against Grendysa is granted, 4) the motion for summary judgment filed by Eren Brewer, Carol Hard, William Darrah and William Bradley against Grendysa is granted, 5) Plaintiff's claims against James Hubbard and the Daraios are dismissed with prejudice, 6) the claims filed by Eren Brewer, Carol Hard, William Darrah and William Bradley filed a third party claim against T.L.C. Funding, Inc.-MA and certain John Does are dismissed, and 7)  the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  Those claims are remanded to the

Superior Court of New Jersey, Law Division, Cape May County.  An appropriate Order follows.


Dated: September 27, 2005                                    _____


                                              S/Freda L. Wolfson
_____     Honorable Freda L. Wolfson
                                              United States District Judge